UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD C. KOLESAR,<br><br>Plaintiff,<br><br>v.<br><br>BEST MADE COMPANY LLC,<br><br>Defendant. | Case No. 1:20-cv-0017<br>Erie Division<br><br>LEAD CASE |
| ROBERT JAHODA,<br><br>Plaintiff,<br><br>v.<br><br>LTD COMMODITIES, LLC and<br>AMERIMARK DIRECT, LLC,<br><br>Defendants. | Case No. 2:20-cv-0128<br>Pittsburgh Division<br><br>MEMBER CASE |

## CONSENT DECREE

1.  This Consent Decree is entered into as of the Effective Date, as defined below in Paragraph 11, by and between the following parties: Plaintiff, Robert Jahoda ("Plaintiff") and Defendants LTD Commodities, LLC and AmeriMark Direct, LLC (collectively, "Defendants"). Plaintiff and Defendants shall hereinafter be collectively referred to as, the "Parties" for the purposes and on the terms specified herein.

## RECITALS

2.  Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181-12189 ("ADA") and its implementing regulation, 28 C.F.R. pt. 36, prohibit discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation by any private

1

entity that owns, leases (or leases to), or operates any place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

3. On January ___, 2020, Plaintiff filed this lawsuit against Defendants. Plaintiff alleges that certain websites owned and/or operated by Defendants, including www.ltdcommodities.com, www.amerimark.com, and www.lakeside.com (collectively, the "Websites"), contain barriers that prevent full and equal use by shoppers with visual impairments, in violation of Title III of the ADA, 42 U.S.C. §§12181–12189.

4. Defendants expressly deny that the Websites, or any other websites owned and/or operated by Defendants and their sister companies, affiliated companies, parent companies, subsidiaries and divisions violate Title III of the ADA or any other comparable federal, state or local regulation or statute, including but not limited to the ADA. By entry into this Consent Decree, Defendants do not admit any wrongdoing whatsoever.

5. This Consent Decree resolves, settles, and compromises all issues between the Parties based on the allegations set forth in Plaintiff's Complaint [ECF No. 1], as well as any claims involving any other websites operated by Defendants and their sister companies, affiliated companies, parent companies, subsidiaries and divisions.

6. This Consent Decree is entered into by the Plaintiff, individually.

**JURISDICTION**

7. Plaintiff asserts that Defendants own and/or operate the Websites, which are available through the internet to personal computers, laptops, mobile devices, tablets, and other similar technology. Plaintiff contends that Defendants' Websites are sales and service establishments whose operations affect commerce and public accommodations subject to Title III of the ADA. 42 U.S.C §12181(7); 12182(a); 28 C.F.R. §§ 36.104, 36.201(a). Defendants deny

2

that the Websites are public accommodations or places of public accommodation or are otherwise subject to Title III of the ADA.

8. Plaintiff is suing on his own behalf, as an aggrieved person pursuant to 42 U.SC. § 12188(b)(2)(b).

9. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 12188. The Parties agree that venue is appropriate.

## AGREED RESOLUTION

10. Plaintiff and Defendants agree that it is in the Parties' best interest to resolve this lawsuit on mutually agreeable terms without further litigation. Accordingly, the Parties agree to the entry of this Consent Decree without trial or further adjudication of any issues of fact or law raised in Plaintiff's Complaint.

In resolution of this action, the Parties hereby **AGREE** to the following:

## DEFINITIONS

11. Effective Date means the date on which this Consent Decree is entered on the Court's Docket Sheet following approval by the Court.

12. Visual Impairment means any physical, mental, or sensory impairment that substantially limits a person in the major life activity of seeing.

13. Reasonable Efforts means, with respect to a given goal or obligation, the efforts that a reasonable person or entity in Defendants' position would use to achieve that goal or obligation. Any disagreement by the Parties as to whether Defendants have used Reasonable Efforts as provided for under this Consent Decree shall be subject to the dispute resolution procedures set forth in paragraphs 20 through 27 of this Consent Decree. Reasonable Efforts shall also mean commercially reasonable efforts, and shall be further interpreted so as to not require to

3

undertake efforts whose cost, difficulty or impact on Defendants' website-related operations, or otherwise, could constitute an undue burden, as defined in Title III of the ADA but as applied solely to Defendants' website-related operations as though they are collectively a stand-alone business entity, or which could result in a fundamental alteration in the manner in which Defendants operate their respective website-related properties or the primary functions related thereto, or which could result in a loss of revenue or traffic on their respective website-related operations.

## TERM

14. The term of this Consent Decree shall commence as of the Effective Date and remain in effect for the earlier of: (1) twenty-four (24) months from the Effective Date; or (b) the date, if any, that final regulations are adopted by the United States Department of Justice for websites under Title III of the ADA.

## GENERAL NONDISCRIMINATION REQUIREMENTS

15. Pursuant to the terms of this Consent Decree, Defendants:

    a. shall not deny persons with a Visual Impairment, including the Plaintiff, the opportunity to participate in and benefit from the goods, services, facilities, privileges, advantages, and accommodations through their Websites as set forth herein. 42 U.S.C. §12182(b)(1)(A)(i); 28 C.F.R. § 36.202(a);

    b. shall use Reasonable Efforts to provide persons with a Visual Impairment, including the Plaintiff, an equal opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, and accommodations provided through their Websites as set forth herein. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.202(b); and

    c. shall use Reasonable Efforts to ensure that persons with a Visual Impairment, including the Plaintiff, are not excluded, denied services, segregated, or otherwise treated differently because of the absence of auxiliary aids and services, through their Websites as set forth herein. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303.

## COMPLIANCE WITH TITLE III OF THE ADA

16. **Web Accessibility Conformance Timeline:** Defendants shall ensure full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Websites according to the following timeline and requirements provided that the following dates will be extended in the instance that the Department of Justice releases regulations for websites under Title III of the ADA while this Consent Decree is in effect and which contain compliance dates and/or deadlines further in the future than the dates set forth herein:

    a. Within twenty-four (24) months of the Effective Date, Defendants shall ensure that the Websites substantially conform to the Web Content Accessibility Guidelines 2.0 Level A and AA Success Criteria ("WCAG 2.0 AA") in such a manner so that the Website will be accessible to persons with Vision Impairments or blindness. Should the United States Congress, the United States Department of Justice, or the United States Supreme Court issue one or more rulings or final regulations (as applicable) adopting a legal standard for website accessibility that is different from the WCAG 2.0 AA, Defendants shall have the option of substantially complying with such legal standard in their sole and absolute discretion.

    b. Defendants shall not be responsible for ensuring that third party content or plug-ins that are not owned by Defendants, but are otherwise located on the Websites or linked to

from the Websites, are accessible or otherwise substantially conform to WCAG 2.0 AA or any then-existing ADA compliance standard.

    c. Within 120 days of the execution of this Agreement, Defendant shall (by email or by physical mail via the United States Postal Service) provide written notice to known third parties that own or manage third party content or plug-ins ("Third Party Website Content") located on the Websites or linked to from the Websites that requests that Third Party Website Content notifying them to substantially conform to WCAG 2.0 AA in such a manner so that the Third Party Website Content will be accessible to persons with Vision Impairments or blindness. Notwithstanding anything set forth herein to the contrary, Defendants shall not be responsible or liable for obtaining, ensuring, managing, auditing of or other notifications in connection with Third Party Website Content ADA compliance.

    d. If Defendants determine at any time during the twenty-four (24) month period beginning on the Effective Date that they no longer need or desire to continue operating any of the Websites, and to shut down or otherwise discontinue the use of any of the Websites, they may do so without violating this Consent Decree.

  17. **Customer Assistance for Users with Disabilities:** Defendants agree to promptly take, and are already in the process of taking, various steps to ensure that any users with disabilities who encounter difficulties using the Websites have a means to contact Defendants to notify them regarding their difficulties accessing any part of the Websites, and that Defendants will have personnel available to promptly respond to those individuals who report any accessibility issues and help resolve such issues. Defendants shall post on their Websites information regarding how any users with disabilities who encounter difficulties using the Websites can contact Defendants for this purpose and to obtain such assistance.

## SPECIFIC RELIEF TO PLAINTIFF

18.     **Specific Relief:** The Plaintiff and the Defendants have agreed to settle all matters relating to costs, damages, attorneys' fees, experts' fees, other financial matters, as well as Plaintiff's counsel's obligation to defend at Plaintiff's counsel's expense in any action or demand, whether filed or not, relating to any alleged inaccessibility of the Websites through a separate, confidential letter agreement (the "Letter Agreement") hereby incorporated by reference into this Consent Decree. The Letter Agreement shall be provided to the Court *in camera* for inspection and review if the Court so requires in order to extend its enforcement jurisdiction over the terms of the Letter Agreement.

## PROCEDURES IN THE EVENT OF DISPUTES

19.     The procedures set forth in Paragraphs 20 through 27 must be exhausted in the event that (i) Plaintiff alleges that Defendants have failed to meet their obligations pursuant to this Consent Decree or (ii) Defendants allege that there is a criteria of WCAG 2.0 AA with which they cannot substantially comply as set forth herein. There will be no breach of this Consent Decree by Defendants in connection with such allegations until the following procedures have been exhausted.

20.     Plaintiff will notify Defendants in writing after the dates for compliance set forth herein if they believe that any of the Websites are in any way not compliant with this Consent Decree. Defendants will notify Plaintiff in writing within a reasonable period if they believe there is a criteria of this Consent Decree with which they cannot substantially comply hereunder. All notifications must include reasonable detail and shall be made in the manner set forth in Paragraph 28.

21. Within thirty (30) days of either Party receiving notice as described in Paragraph 19, the other Party will respond in writing to the notice. Within fifteen (15) days of receipt of the response, the Parties will meet by telephone, or in person, in an attempt to informally resolve the issue(s) raised.

22. Should the Parties thereafter have a dispute regarding an issue raised in a notice given under Paragraph 20, the dispute shall be handled pursuant to the procedures set forth in Paragraphs 23 through 27 below.

23. If a party believes that the other party hereto has not complied in all material respects with any provision of the Consent Decree, that party shall provide the other party with notice of non-compliance containing the following information: (i) the alleged act of non-compliance; (ii) a reference to the specific provision(s) of the Consent Decree that is not being complied with in all material respects; (iii) a statement of the remedial action sought by the initiating party; and (iv) a reasonably detailed statement of the specific facts, circumstances and legal argument supporting the position of the initiating party.

24. Within forty-five (45) days of receipt of a notice pursuant to Paragraph 23, the non-initiating party shall respond to the initiating party in writing.

25. Within fourteen (14) days after the response described in Paragraph 24, the Parties shall informally meet and confer and attempt to resolve the issues raised in the Notice.

26. If the matters raised in a notice provided pursuant to the above are not resolved within forty-five (45) days of the initial meeting and conference required by Paragraph 25, either party may submit the unresolved matters to nonbinding mediation before a mutually agreed upon mediator.

27. If the dispute is not resolved in mediation, either party may move this Court for enforcement of compliance with this Agreement.

28. Any of the time periods set forth in Paragraphs 21 through 27 may be extended by mutual agreement of the Parties.

29. Any notice or communication required or permitted to be given to the Parties hereunder shall be given in writing by e-mail and by overnight express mail or United States first class mail, addressed as follows:

To Plaintiff:

Carlson Lynch, LLP
Attn: R. Bruce Carlson, Esq.
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Email: bcarlson@carlsonlynch.com

To Defendants:

Blank Rome, LLP
Attn: Jayme L. Butcher, Esq.
501 Grant Street, Suite 850
Pittsburgh, PA 15219
(412) 932-2801
Email: jbutcher@blankrome.com

AND

LTD Commodities, LLC
200 Tristate International, Suite 400
Lincolnshire, IL 60069

AND

AmeriMark Direct LLC
6864 Eagle Road
Cleveland, OH 44130

## MODIFICATION

30. No modification of this Consent Decree shall be effective unless in writing and signed by authorized representatives of all Parties.

## ENFORCEMENT AND OTHER PROVISIONS

31. The interpretation and enforcement of this Consent Decree shall be governed by the laws of the Commonwealth of Pennsylvania.

32. This Consent Decree contains the entire agreement of the Plaintiff and the Defendant concerning the subject matter described herein, and no other statement, promise, or agreement, either written or oral, made by any party or agent of any party, that is not contained in this Consent Decree, and concerns the subject matter described herein, shall be enforceable.

33. If any provision of this Consent Decree is determined to be invalid, unenforceable, or otherwise contrary to applicable law, such provision shall be deemed restated to reflect as nearly as possible and to the fullest extent permitted by applicable law its original intent and shall not, in any event, affect any other provisions, all of which shall remain valid and enforceable to the fullest extent permitted by applicable law.

## PERSONS BOUND AND INTENDED THIRD-PARTY BENEFICIARIES

34. This Consent Decree shall be binding on and inure to the benefit of: Defendants and their respective sister companies, affiliated companies, parent companies, subsidiaries, successors, assigns, agents, employees, officers, members and shareholders. In the event that Defendants seek to transfer or assign all or part of their interest in any of the Websites covered by this Consent Decree, and the successor or assign intends on carrying on the same or similar use of the Website(s), then the successor or assign, and not the Defendants, shall be solely responsible

for the obligations remaining under this Consent Decree for the duration of the remaining term of the Consent Decree.

35. The Parties to this Consent Decree expressly intend and agree that this Consent Decree shall inure to the benefit of all persons with a Visual Impairment who utilize a screen reader to access the Website, which visually-impaired persons shall constitute third-party beneficiaries to this Consent Decree. Such third-party beneficiaries shall be entitled to enforce the provisions of this Consent Decree against and enforce the dispute resolution provisions herein.

36. The Plaintiff and the Defendants agree that, as of the date of entry of this Consent Decree, litigation is not "reasonably foreseeable" concerning the matters described herein. To the extent that any of the parties previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described herein, the party is no longer required to maintain such a litigation hold. Nothing in this paragraph relieves any party of any other obligations imposed by this Consent Decree.

37. The signatories represent that they have the authority to bind the respective parties, Plaintiff and Defendants, to this Consent Decree.

**CONSENT DECREE HAS BEEN READ**

38. This Consent Decree has been carefully read by each of the Parties, and its contents are known and understood by each of the Parties. This Consent Decree is signed freely by each party executing it. The Parties each had an opportunity to consult with their counsel prior to executing the Consent Decree.

**RELEASE**

39. In exchange for the good and valuable consideration set forth herein, the sufficiency of which is hereby acknowledged by the Parties, Plaintiff, his agents, employees, family members,

partners, successors, assigns, and heirs, along with anyone claiming by or through them, jointly and severally (collectively, the "Releasing Parties") hereby release, acquit, satisfy, and discharge Defendants, along with any and all of their respective predecessors, agents, representatives, employees, partners, substitutes, replacements, successors, assigns, officers, directors, shareholders, members, subsidiaries, parents, sister companies, affiliated entities, vendors, and any entity or person related to them, jointly and severally (hereinafter, the "Released Parties") from any and all claims, demands, liabilities, debts, judgments, damages, expenses, actions, causes of action, in law or equity, or suits of any kind, whether known or unknown that the Releasing Parties have, may have, may have had, or may hereafter raise against the Released Parties with respect to the Websites and this subject litigation arising under Title III of the ADA or any other disability-related federal, state or local law, ordinance, or rule, with respect to the time period running from the beginning of the world through the date of this Consent Decree, including, but not limited to, all claims by the Releasing Parties for attorney's fees and costs, expert fees, litigation expenses, damages, or any other amount, fee, and/or cost, if any, with the exception of attorneys' fees, costs, and damages required to be paid by pursuant to the Letter Agreement.

*Signatures on next page.*

Agreed and Consented to:

_____
Robert Jahoda, Individually

LTD Commodities, LLC

By _M.A. Bull_____

Its _CFO_____

AmeriMark Direct, LLC

By _M.A. Bull_____

Its _CFO_____

**[Remainder of Page Left Intentionally Blank]**

## COURT APPROVAL, ADOPTION, AND ENTRY OF THE CONSENT DECREE

**THE COURT, HAVING CONSIDERED** the pleadings, law, underlying facts and having reviewed this proposed Consent Decree,

**FINDS AS FOLLOWS:**

1) This Court has personal jurisdiction over Plaintiff and Defendants for the purposes of this lawsuit pursuant to 28 U.S.C. §§ 1331;

2) The provisions of this Consent Decree shall be binding upon the Parties;

3) Entry of this Consent Decree is in the public interest;

4) This Consent Decree is for settlement purposes only and does not constitute an admission by Defendants of any of the allegations contained in the Complaint or any other pleading or wrongdoing alleged in this lawsuit, nor does it constitute any finding of liability against Defendants;

5) Plaintiff is acting as a private attorney general in bringing this lawsuit and enforcing the ADA; and

6) This Consent Decree shall be deemed as adjudicating, once and for all, the merits of each and every claim, matter, and issue that was alleged, or could have been alleged by Plaintiff based on, or arising out of, or in connection with, the allegations in the Complaint.

**NOW THEREFORE,** the Court approves this Consent Decree and in doing so specifically adopts it and makes it an Order of the Court.

**DONE AND ORDERED** in Chambers at Pittsburgh, Pennsylvania, this 21ST day of February, 2020.

Arthur J. Schwab
UNITED STATES DISTRICT JUDGE

cc: Counsel of record via CM/ECF